UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

PLATINUM LUXURY AUCTIONS LLC
and TRAYOR LESNOCK,

    Plaintiffs,

vs.

CONCIERGE AUCTIONS, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiffs Platinum Luxury Auctions LLC ("Platinum") and Trayor Lesnock ("Lesnock," and together with Platinum, "Plaintiffs") sue Defendant Concierge Auctions, LLC ("Defendant"), and allege the following:

## NATURE OF ACTION

1. This is an action to challenge the enforceability of an unlawful restrictive covenant—unbounded by time, scope, or application—that restrains Plaintiffs from competing with Defendant. Couched in terms of "non-disparagement," the unavoidable effect of the restrictive covenant is to stifle competition to the detriment of the marketplace and public at large. Under Florida law, covenants such as the one at issue here are invalid unless they satisfy a legitimate business interest, are limited in time and geographic application, and are reasonably specific. The "non-disparagement" clause at issue here is, in reality, a restrictive covenant that restrains competition but satisfies none of the exceptions against its presumptive invalidity. It is therefore unenforceable as a matter of law. Plaintiffs bring this suit for a declaratory judgment to



that effect.

**THE PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff Platinum is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Plaintiff Platinum's sole member, Plaintiff Trayor Lesnock, is a citizen of the State of Florida residing in Broward County, Florida.

3. Defendant is a Delaware limited liability company with its principal place of business in the State of Texas. Defendant's members are citizens of the States of Texas, New Jersey, and Delaware.

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the citizenship of the parties is completely diverse.

5. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2)-(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this District.

**FACTUAL ALLEGATIONS**

6. The luxury real estate auction business is a growing segment of the high-end residential real estate markets. Real estate auctions offer advantages over the traditional listing model for buying and selling residential real estate. Compared to the traditional listing model, properly conducted auctions result in quicker sales that provide greater transparency and more money for the property seller.

7. Defendant is the dominant player in the luxury real estate auction industry in terms of transaction volume, company size and operational reach. Plaintiff Platinum has less market share than Defendant but is arguably the second largest company in the industry. Plaintiff Platinum and Defendant compete for the same business, and as a result potential clients frequently ask



Plaintiff Platinum to compare itself to Defendant, to explain why Plaintiff Platinum is better suited to handle the client's auction, and to give an honest assessment of Defendant's capabilities and reputation.

8. At the same time, Defendant has consistently been subject of significant, negative media coverage since its founding. Much of the media coverage mentions litigation against or related to Defendant and its business practices, including allegations that Defendant fraudulently uses dummy or fake bidders to artificially drive up the price of properties offered at its auctions and to make it appear to sellers that there is more buyer interest in their properties than there is in reality. *See, e.g.*, Katherine Clarke, *Luxury Real-Estate Firm Concierge Auctions Fights Allegations of Fraudulent Bids*, Wall Street Journal, (Mar. 1, 2019 7:50 pm ET), https://www.wsj.com/articles/luxury-real-estate-firm-concierge-auctions-fights-allegations-of-fraudulent-bids-11549568689?st=zw1385e4ofkp6rr&reflink=desktopwebshare_permalink. Plaintiffs are frequently asked about these allegations by both clients and other professionals in the real estate brokerage industry.

9. On or about January 22, 2014, Plaintiff Lesnock, under the username "CivilServant" posted a public comment (the "Comment") on an article on Chicago Magazine's website about the unsuccessful auction of Michael Jordan's house, which was conducted by Defendant. In the Comment, Plaintiff Lesnock speculated that Defendant might be involved in criminal conduct based on the information in a publicly available article that detailed federal litigation in which Defendant was sued by former customers and a competitor, who claimed Defendant had perpetrated various frauds and other predicate acts under the RICO statute.

10. After publication of the Comment, Defendant sued Plaintiffs for defamation in Miami-Dade County Circuit Court. By Confidential Settlement Agreement dated September 5,



2014, Plaintiffs agreed to retract the Comment from the Chicago Magazine website and to publish a correction notice of the website. In addition, the Confidential Settlement Agreement contained the following non-disparagement provision (the "Restrictive Covenant"):

3. Non-Disparagement.

a. [Plaintiffs] acknowledge and agree that the professional, business and personal reputations of [Defendant] and its employees, directors, and officers are important and should not be impaired by [Plaintiffs] after this Agreement is executed. Therefore, [Plaintiffs] agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of [Defendant], its employees, directors, and officers, including without limitation Chad Roffers, Mike Russo and Laura Brady. [Plaintiffs] acknowledge and agree that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, investors, potential investors, any board of directors or advisory board or directors, industry analysts, competitors, strategic partners, vendors, employees (past and present), and clients. . .

11.     Under the Confidential Settlement Agreement, Plaintiff Platinum was required to "ensure compliance" with the terms of the Restrictive Covenant "by all its current and future employees and independent contractors." (Confidential Settlement Agreement at § 3(b).) Additionally, the Restrictive Covenant, by its terms, inures to the benefit of Defendant and its "heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, successors, and assigns."

12.     The Restrictive Covenant is a restraint on trade. It prohibits Plaintiffs from "defam[ing], disparage[ing], or in any way criticiz[ing] the personal or business reputation, practices, or conduct of [Defendant], its employees, directors, and officers, including without limitation Chad Roffers, Mike Russo and Laura Brady." Under its terms, Plaintiffs are barred from making legitimate, truthful, and good faith statements to clients, real estate brokers and other



professionals in the industry that are necessary for Plaintiffs to reasonably compete. For example, Plaintiffs are prohibited from comparing their performance and results to those of Defendant, from explaining why Plaintiff Platinum is better suited to handle the client's auction, or from giving an honest, objective assessment of Defendant's capabilities and reputation. Indeed, given the extensive and negative media attention and the numerous and sometimes high-profile lawsuits against Defendant—combined with Defendant's years-long, large-scale marketing campaign to promote its services luxury real estate brokers and wealthy homeowners, thus dramatically increasing the public's awareness of Defendant—it has become practically impossible for Plaintiffs to avoid being confronted with inquiries or comparisons regarding Defendant, and to abide by the terms of restrictive covenant without significantly compromising their ability to reasonably compete in their industry.

13. Under Florida law, "[e]very contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful," Fla. Stat. § 542.18, unless it is "reasonable in time, area, and line of business," Fla. Stat. § 542.335(1). Any covenant restricting competition must be justified by a "legitimate business interest," must typically not last longer than two years, and must be limited by geography scope. Additionally, the covenant must be sufficiently definite in its terms to prevent abuse of its enforcement.

14. The Restrictive Covenant fails to satisfy any of these requirements to escape the ambit of Fla. Stat. § 542.18, let alone all of them.

15. Defendant's desire to limit competition and criticism is not justified by a legitimate business interest and does not satisfy the strictures of the statute as a matter of law. It is a restraint on trade in perpetuity.

16. It is unlimited in geographic scope.



17.      It is unduly vague in its prohibitions, especially because Defendant has exhibited a pattern and practice of misusing the provision as a form of anti-competitive behavior to prevent lawful competition from Plaintiff Platinum.

18.      Indeed, Defendant has brought several frivolous actions against Plaintiff Platinum for alleged breaches of the Restrictive Covenant in an unlawful effort to use the Restrictive Covenant to eliminate its biggest competitor. To give just one example, Defendant has improperly sued Plaintiffs for breach of the Restrictive Covenant based on the following email:

> From: David Ashcroft <dashcroft@platinumluxuryauctions.com>
> Subject: Atten: Tom, RE: 463 & 464 Pinnacle View / COVID-19
> Date: March 31, 2020 at 8:53:09 AM CDT
> To: Thomas Hedrick <tomhedrick1@gmail.com>
> Cc: Zach Morse <zach@lpwsir.com>
>
> Hi Tom,
>
> I hope this message finds you and your family all healthy and well. I notice that your property remains (as it pertains to a Luxury Auction) in situ. Hopefully this being case out of an abundance of caution!!
>
> I/we are frankly shocked by the blind push forward (in these market conditions) of some auction companies and the resulting claims of 'virtualized market successes'. The only person I can see being happy here is the buyer.
>
> To be clear, Platinums model does not need fair weather to perform. Indeed we shine equally as bright, even in the most bearish of markets. The difference here is that the 'weather' we are all experiencing is unlike any other. There are no patterns, no rules. The only constants brewing in the clouds are fear and uncertainty. As such, caution should rule the day.
>
> I would love to share the cautionary measures we are taking at present, our potential plans forward for auctions (subject to variables, of course), and our current "market thesis" based on the huge volume of real-market outreach and data gathering we've been doing. (We have even had sellers contracted with other auction firms reach out to us seeking help getting out of their contracts, as they're shocked at the given company's willingness to blindly push forward with an auction in the face of COVID-19...)
>
> Happy to speak at any moment. In the meantime, stay well.
>
> David
>
> 
> PLATINUM
> LUXURY AUCTIONS
>
> David C Ashcroft


19. The above-referenced email, authored by an independent contractor of Platinum, does not even mention Defendant. In fact, the property owner who was the recipient of the email went on to hire Defendant, who then sold the property at auction and presumably earned a sizable fee. Yet, to disrupt Plaintiff's business and force it to spend time and money mired in litigation, Defendant has weaponized the Restrictive Covenant to prevent Plaintiffs from distinguishing themselves in the marketplace and engaging in routine promotion and explanation of their services. This is directly contrary to Florida law.

20. All conditions precedent to this action have been performed, have occurred, are futile, or have been waived.

**COUNT I – DECLARATORY JUDGMENT**

21. Plaintiffs reallege and incorporate by reference the allegations preceding the first count of this Complaint as though fully set forth herein.

22. An actual, present, and justiciable controversy has arisen between Plaintiffs and Defendant regarding the enforceability of the Restrictive Covenant.

23. Defendant has repeatedly brought and threatened to bring legal action against Plaintiffs for alleged violations of the Restrictive Covenant.

24. Plaintiffs have been substantially handicapped in their ability to legitimately compete with Defendant based on the Restrictive Covenant.

25. Plaintiffs seek a declaratory judgment that the Restrictive Covenant is an unlawful and unenforceable restraint on trade under Florida law.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment according to the declaratory relief sought herein, award Plaintiffs their costs and attorneys' fees incurred in bringing this suit, and enter such other relief that the Court deems just and proper.



Respectfully submitted,

By: /s/ *Benjamin H. Brodsky*
Benjamin H. Brodsky, Esq., FBN 73748
Robert Visca, Esq., FBN 111800
BRODSKY FOTIU-WOJTOWICZ, PLLC
*Counsel for Plaintiffs*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
bbrodsky@bfwlegal.com
robert@bfwlegal.com
docketing@bfwlegal.com

BRODSKY FOTIU-WOJTOWICZ